UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

    MARTIN H. TRUDELL                                Case No. 06-01611 K

                          Debtor
------------------------------------------------------------------

OPINION AND ORDER

        This case picks up where my colleague U.S. Bankruptcy Court Judge John C. Ninfo II left off in the case of *In re Hayward,* 343 B.R. 41 (Bkrtcy. W.D.N.Y., 2006), *affirmed on the opinion below* at 2007 WL 4232721 (District Court, W.D.N.Y., 2007), wherein it was held that the August 30, 2005 expansion of the New York Homestead Exemption, found at N.Y. C.P.L.R. 5206, from $10,000 to $50,000 does apply retroactively to "obligations or debts incurred prior to August 30, 2005." (To similar effect see *In re Little,* 2007 WL 2791122 (District Court, N.D.N.Y., 2007).)

        Here the question is whether that result also applies to a debt or obligation that was reduced to a judgment that was filed before August 30, 2005, thereby becoming a lien on the Debtor's homestead. The matter is before this Court because the Debtor has brought a 11 U.S.C. § 522(f) motion to set aside such judgment lien, relying on the expanded homestead exemption, a motion which cannot succeed if the homestead exemption for this Debtor and this pre-amendment judgment lienholder, remains at $10,000, as the judgment creditor argues.

        This writer adopts *Hayward* in all regards,[1] and so the only remaining question is

---

[1]Even if this Court were not inclined to agree with *Hayward*, the District Court affirmance in *Hayward* is binding on all bankruptcy judges of this District. See, for example *In re Reid*, 237 B.R. 577 (Bankr. W.D.N.Y. 1999); *In re Shunnorah*, 273 B.R. 671 (Dist. Ct. M.D. Fla. 2001). Cf. Singerman, Paul and Avron, Paul, "Of Precedents and

whether the judgment lien now before the Court was a "vested property right" that could not constitutionally be taken away by the August 30, 2005 amendment without addressing concerns under the "takings clause."

"Although retroactive statutes are not specifically prohibited by either the Federal or the New York State Constitution, a retroactive statute may nevertheless be held to violate constitutional provisions of general applicability, such as the proscription of legislation impairing vested rights without due process, or the obligation of contracts. . . .  A court will not address the issue of retroactivity with respect to a statute that may interfere with antecedent or vested rights unless the statute expresses an unequivocal intention that this is what the Legislature intended."  97 N.Y.Jur.2d, Statutes § 229. [Case authorities omitted.]

This writer need not attempt to address general principles surrounding the elusive concepts of "rights" or "interests" and when they become "vested," because the highest court of the State of New York has addressed the question of when a "judgment lien" upon real estate becomes "vested."

In the case of *Watson v. New York Central Railroad Company*, 47 N.Y. 157 (NY 1872), New York's highest court was asked whether a judgment lienholder was entitled to be a party to, and receive compensation from, an eminent domain taking initiated by a railroad company upon explicit authority of a state statute delegating the power of eminent domain to the railroad to secure its right-of-way, etc., in cases in which it was unable to obtain it by contract

---

Bankruptcy Court Independence: Is a Bankruptcy Court Bound by a Decision of a Single District Court Judge in a Multi-Judge District?", 22 ABI Journal 1 (2003).

with the owners. That statute made no provision for the benefit of judgment lienholders. Rather, the whole appraised value of the land was directed to be paid to the owners and the owners were left to pay their own debts.

In that context, the Court made the following statements:

> "[A] Judgment creditor of an owner has no estate or proprietary interest in the land. He stands wholly upon the law, which gives him remedy for the collection of his debt by a sale of land under execution, in case sufficient personal property of the debtor should not be found. This remedy is not secured by contract, but is purely statutory, and in aid of it Acts have been passed from time to time, authorizing a sale of the land which the debtor owned at the time of the recovery or docketing of the judgment, or at any subsequent period, and making the judgment a lien upon the land. The duration of this lien and the mode of its enforcement and discharge are subjects which appertain to the laws of the collection of debts; and the rules upon those subjects have been changed, from time to time, according to the will of the Legislature. The power of the Legislature to regulate those matters cannot be doubted. Acts have been passed shortening and lengthening the duration of the liens of existing judgments, and even providing for their extinguishment without any proceeding to which the judgment creditor was a party. . . . It is clearly within the power of the Legislature to abolish the lien of all judgments at any time before rights have become vested or estates acquired under them, and, placing real estate on the same footing as personal property, to confine the remedies of the creditor to the property held by the debtor at the time of issuing the execution. This would be no greater exercise of power that the abolition of the right of distress for rent, or of the lien of the landlord on property taken in execution, . . . . The validity of such laws has been fully recognized even where they affected existing claims or judgments. They do not take away property, or affect the obligation of contracts, but simply affect legal remedies. There can, therefore, be no doubt of the validity of a provision causing the lien of a judgment, ***not ripened into a title by a sale***, to be superceded by the taking of land under proceedings in exercise of the right of eminent domain, on payment of compensation to the owner of the land . . . . The matter of the lien of judgments being wholly under the control of the Legislature, they had power to confer upon the [railroad] company the right of possession and use of the land free from all such liens, on paying the value of the land to the owners; and we think it was manifestly their intention so to do, modifying to that extent laws giving liens to judgment creditors. In the present case, this modification had been made before the judgment relied upon was <u>recovered</u> . . . ." [Emphasis added.]

Though an old case, to be sure, and though some statutes might have been changed since to make provision for judgment lien holders, this writer can find no basis upon which to conclude that the case does not still represent the law for purposes of this case.

What the Legislature gave to holders of judgment liens, the Legislature may take away prior to sale or other satisfaction of the judgment lien. The Court thus concludes that the fact that the judgment lien that is the target of this 11 U.S.C. § 522(f) motion was filed in the County Clerk's Office and became a lien on the Debtor's homestead before the enactment of the increase in homestead exemption from $10,000 to $50,000 does not affect the Debtor's right now to claim the $50,000 exemption in order to accomplish the avoidance of the judgment lien.

SO ORDERED.

Dated:   Buffalo, New York
         January 14, 2008

                                                            s/Michael J. Kaplan
                                                     _____
                                                            U.S.B.J.